HAMILTON BASKIN *et al., Appellants,* v. E. L. LIVERS
*et al., Respondents.*[1]

*Longfellow & Fitzpatrick,* for appellants.

*Alexander Stewart* and *Robert D. Hamlin,* for re-
spondents.

TOLMAN, J.—In January, 1933, appellants, as plain-
tiffs, instituted an action in the superior court for
King county by the filing of a summons and com-
plaint and by personal service thereof, in and by

[1]Reported in 43 P. (2d) 42.

which they sought a permanent injunction against the respondents, as defendants, restraining them from, in any manner, interfering with a certain described pipe line, connection and water flow, which plaintiffs alleged that they owned and possessed and had theretofore lawfully maintained. It appears from the complaint that this pipe line had (until interfered with) been constructed and used to carry water from springs located on land belonging to the defendants to the property owned and occupied by the plaintiffs for domestic and perhaps other uses.

The defendants made no appearance in the action. Their default was duly entered, and in due course thereafter the plaintiffs submitted evidence in support of the allegations of their complaint, and on March 2, 1933, a decree was duly entered, which, among other things, found that the plaintiffs were the owners of the land to be benefited by the flow of water through the pipe line; that they had obtained a certificate of water rights from the state supervisor of hydraulics covering the taking of the water claimed by them from the springs and had duly recorded the same. The decree further provides:

"That the defendant E. L. Livers and the defendant Mary Livers, his wife, and each of them, and also any and all persons and parties acting as their agents or employees or for or on behalf of either of them or of the marital community existing between them, be and they are, and each is, hereby permanently enjoined and restrained by this court from in any manner interfering with the pipe line connection and water flow for continuous and uninterrupted flow of water from the aforesaid springs on aforesaid Tract C so as to supply the plaintiffs, and any and all persons claiming by through or under them and the marital community existing between them, with a continuous and uninterrupted flow of pure water fit for human consumption, to the full extent of aforesaid certified water

right in said springs of 0.005 of a cubic foot of water continuous flow per second, which right is hereby confirmed and decreed in and declared unto the plaintiffs Hamilton Baskin and Edwina Baskin, and unto the marital community existing between them, and unto any and all successors in interest of said plaintiffs and of said marital community, for a valid, continuing and proper use and property right in connection with and running with aforesaid Tract A as their land and premises.''

On August 29, 1934, the plaintiffs filed an affidavit in the cause, which, after referring to the decree and its effect reads:

''That several times subsequently, to-wit: on the 20th day of March, 1933, the defendant, E. L. Livers, plugged the pipe line. That on the 9th day of June, 1933, the plaintiffs pipe line became plugged with sand which your affiant believes to be the act of the defendant, E. L. Livers. That again on the 16th day of February, 1934, the screening and box were removed from the springs which resulted in the plumbing of the plaintiff's herein being completely congested and compelling the plaintiff herein to install new plumbing. Three notices of state regulations were removed up to date. All of which notices were posted by Mr. Shattuck, deputy sheriff. That again, to-wit: on the 12th day of August, 1934, the water stopped, but your affiant does not know the present condition of the springs but believes same to be blocked. That the plaintiffs herein have been threatened with violence in case they go upon the premises known as tract 'C' for any purpose of repairing the same. That your affiant is further desirous of having oral testimony heard upon said hearing of the show cause.''

Whereupon a show cause order was issued, to which defendants answered, denying any violation by them of the terms of the decree and pleading affirmatively that the plaintiffs had never condemned any right of way for the pipe line nor acquired any right to go upon the lands of the defendants for any pur-

pose. A hearing was had, evidence was taken, and an order resulted discharging the show cause order. In addition, the order contained the following provision:

"It Is Further Ordered, Adjudged and Decreed that until some right be acquired by condemnation, agreement or some method recognized as valid by the law in such cases made and provided the plaintiffs, their heirs, executors, administrators and privies claiming or to claim under the said plaintiffs or either of them be and they now are perpetually enjoined and restrained from entering upon, passing over and in any manner trespassing upon the lands and property of the defendants herein, the same being referred to in the complaint of the plaintiffs and the final decree in this action as 'tract C'."

From this order, the plaintiffs have appealed to this court.

■ Respondents have moved to dismiss the appeal upon the ground that an order purging of contempt is not appealable. No such rule applies in contempt proceedings brought to enforce the decree of a court of equity. Our statute gives a right of appeal in such cases, Rem. Rev. Stat., § 1062 [P. C. § 7455], and we have upheld that right. *State ex rel. Nicomen Boom Co. v. North Shore Boom and Driving Co.*, 55 Wash. 1, 103 Pac. 426, 107 Pac. 196.

The motion to dismiss is denied.

■ It is contended by the appellants that the decree, properly read and construed, establishes their right and title to the water and to an easement for a right of way for the pipe line as then constructed over the respondents' land, with the incidental right to go upon the respondents' land, when and as necessary, to make proper repairs and to maintain the flow of the water to which they are entitled. Or, in other words, that the final order from which the appeal was

taken was an unlawful attempt to modify or to set aside the prior decree on collateral attack.

The law on this subject is well stated in 34 C. J. 511, § 815, which reads:

"A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud in its procurement. Even if the judgment is voidable, that is, so irregular or defective that it would be set aside or annulled on a proper direct application for that purpose, it is well settled as a general rule that it is not subject to collateral impeachment so long as it stands unreversed and in force."

This rule is, of course, limited to the parties to the judgment and those in privity with them. *Wick v. Rea,* 54 Wash. 424, 103 Pac. 462. Here, all concerned were parties to the original decree.

This rule applies to all questions within the issues which were before the court, and which therefore were, or might have been, then adjudicated. *Olson v. Title Trust Co.,* 58 Wash. 599, 109 Pac. 49; *State ex rel. Gladwin v. Cheney,* 67 Wash. 151, 121 Pac. 48.

The decree is therefore conclusive upon appellants' right to maintain a pipe line to conduct the water across respondents' land. That right was asserted in the original complaint, might have been then litigated had it been contested, and was, in legal effect, confessed and admitted by the failure to appear and deny it.

Does this right to so maintain the pipe line carry with it, as a necessary incident, the right to go upon respondents' land for the purpose of making necessary repairs? We think it does. What seems to be the well settled general rule is well stated as follows:

"The owner of the dominant estate may do whatever is reasonably necessary to the enjoyment of the easement and to keep it in a proper state of repair, provided it is done without imposing unnecessary inconvenience on the owner of the fee, and the extent of the easement is not thereby enlarged." 19 C. J. 981.

No other rule seems to be known to the law, and the citation of further authority seems quite unnecessary.

With this setting, it would seem to follow inevitably that, when respondents refused to permit appellants to make the necessary repairs to the pipe line on their land, they violated the decree, and thus became guilty of contempt of the court which entered that decree and which was charged with the duty of enforcing it.

The refusal to permit repairs is not only admitted, it is also strongly asserted by respondents; and that the assertion of the right to prevent repairs being made was accompanied by threats to use force and violence, if necessary, is not denied. That some one plugged the pipe and otherwise did damage at the intake, thus preventing the usual and customary flow of the water, on more than one occasion, is well established, but no one saw respondents do these acts.

Under this state of the record, we think the trial court should have adjudged respondents guilty of contempt; but the penalty ought to be such as to prevent future interference with the enjoyment by the appellants of their easement, rather than strictly punitive.

The judgment is reversed, with directions to proceed as herein indicated.

MILLARD, C. J., MAIN, BEALS, and GERAGHTY, JJ., concur.