[No. 31520.   Department Two.   September 20, 1951.]

GRACE RUSDEN SEARS, *Appellant,* v. CHARLES J. RUSDEN, *Respondent.*[1]

[1]Reported in 235 P. (2d) 819.

*Torbenson & Baum* and *Richard M. Thatcher*, for appellant.

*Koenigsberg & Oseran,* for respondent.

WEAVER, J.—Plaintiff, the former wife of defendant, brought this action upon the theory that she had been defrauded of her interest in certain properties at the time the parties entered into a property settlement agreement.

The parties were married in 1927. Until 1940, both were employed. In 1940, they entered into business for them-selves, owning and operating the Olive Way Triple XXX Barrel in Seattle. During the next five years, they acquired similar business interests; their financial successes were most substantial. For about four years, plaintiff worked actively in the various businesses and had a working knowledge of the community enterprises.

Marital difficulties developed between them between 1940 and 1945, ending in divorce. Prior thereto, however, the parties entered into a property settlement agreement, in the negotiation of which each was represented by counsel. Plaintiff at first asked thirty thousand dollars for her share of the community property. This she later increased by requesting one of the automobiles, furniture, certain personal effects, and half of the community war bonds. Upon this, the parties agreed.

Omitting those parts not here material, the property settlement agreement of April 3, 1945, negotiated by the parties and their counsel, provided:

"WHEREAS, the parties hereto have accumulated community property consisting of equity in a home, businesses, leasehold interests, furniture, bonds, *etc.*, and

"WHEREAS, the parties desire to settle *all property* interests and rights between themselves and to agree upon the terms thereof without the necessity of strife and controversy, and

"WHEREAS, the community property *embraces* [certain properties are listed];

"Now, therefore, in consideration of the foregoing and of the mutual covenants, it is agreed

"1. That [plaintiff] shall be and is. hereby declared to be the sole owner of the automobile which she has heretofore been operating, the sole owner of all furniture now situated in the home property of the parties hereto at 474 - 39th Avenue North, Seattle, Washington, $7000.00 in cash which [defendant] has this day transferred to [plaintiff] and which [plaintiff] hereby acknowledges by affixing her signature hereto.

"2. [Defendant] shall pay [plaintiff] the sum of $100.00 per week commencing on April 9, 1945, and shall continue to pay her a like sum of money each and every week thereafter until [defendant] has made 230 weekly alimony payments of $100.00 each, said alimony payments to continue to be paid under any and all circumstances.

"3. [Defendant] is to have as his sole and separate property, and the same is hereby made his sole and separate property, the community interest in the following listed properties, whether they be real, personal and/or mixed: [Ten items of property are listed.]

"4. It is further agreed that *all the income from all the businesses* of the community from this time forward shall be the sole and separate property of [defendant] and that [plaintiff] *does herein relinquish all claims of any nature whatsoever to all community property acquired by the parties hereto excepting that which has specifically been set off and awarded to her by this instrument* & lien therefor.

"5. It is agreed that [defendant] shall pay all debts and bills incurred by the parties up to April 9, 1945.

"6. This agreement is intended as a complete and final settlement of all of each party's interests and all claims as between the parties hereto, and each of the parties hereby

releases the other from all claims and demands *other than herein provided."* (Italics ours.)

May 15, 1945, plaintiff obtained an interlocutory order of divorce from defendant. In the trial as a default case, the plaintiff wife presented the property settlement agreement to the court, which approved it, and by specific reference incorporated it into the interlocutory order of divorce. It was made final November 29, 1945.

In December, 1948, the plaintiff instituted this action, alleging that at the time of execution of the property settlement agreement the defendant fraudulently concealed certain community assets from her which were not brought before, nor disposed of by, the court in the divorce action, and that she was entitled to share in those assets.

The action was tried to the court, and resulted in the entry of findings of fact and conclusions of law in favor of defendant, followed by a judgment of dismissal.

The court's conclusions of law Nos. 2, 3, and 4 read as follows:

"II. That plaintiff's complaint herein and evidence introduced pursuant thereto constitutes a collateral attack upon the said Interlocutory Decree and Final Decree and such collateral attack will not lie.

"III. [That plaintiff had failed to establish by evidence any of her eight causes of action.]

"IV. That plaintiff's complaint should be dismissed on two grounds as set forth in Conclusions of Law numbered II and III."

Although plaintiff, as appellant, has set forth thirty-four assignments of error, assignment No. 7 directed to conclusion of law No. II, quoted above, is determinative of this appeal.

We first consider, however, whether the property in which plaintiff now claims an interest was before the court in the divorce proceeding; for, if it were not, then this action does not constitute a collateral attack upon the interlocutory order and final decree of divorce.

Under the statute in force at the time, the division of property made by the interlocutory order is final and conclu-

sive upon the parties, subject only to the right of appeal. Rem. Rev. Stat. (Sup.), § 988 [P.P.C. § 23-15]; *Goodsell v. Goodsell*, 38 Wn. (2d) 135, 228 P. (2d) 155. There was no appeal from the interlocutory order of divorce entered May 15, 1945.

■ As to community property not disposed of by an interlocutory order of divorce, the parties become tenants in common. The reason for this rule is that the court did not exercise its jurisdiction over the property. In the oft-cited case of *Ambrose v. Moore*, 46 Wash. 463, 90 Pac. 588, 11 L. R. A. (N.S.) 103, we said:

"If the property rights of the parties are not thus brought before the court in some appropriate manner, such rights are not, and cannot, be affected by the decree. *Philbrick v. Andrews*, 8 Wash. 7, 35 Pac. 358. Where no disposition of the property rights of the parties is made by the divorce court, the separate property of the husband prior to the divorce becomes his individual property after divorce, the separate property of the wife becomes her individual property, and from the necessities of the case, their joint or community property must become common property. After the divorce there is no community, and in the nature of things there can be no community property. The divorce does not vest or divest title, the title does not remain in abeyance, and it must vest in the former owners of the property as tenants in common."

■ When the court ratified and approved the property settlement agreement made by the parties, it constituted a division of the property with like effect as if made by the court pursuant to Rem. Rev. Stat. (Sup.), § 988. *Goodsell v. Goodsell, supra.* In *Robinson v. Robinson*, 37 Wn. (2d) 511, 225 P. (2d) 411, we said:

"It [the property settlement agreement] became more than the stipulation of the parties—it became the court's disposition of the property—and the reciprocal rights and obligations as set forth therein were definite, binding on the parties, and *merged in the decree*." (Italics ours.)

The plaintiff (appellant) urges that certain items of community property were concealed from her, were not included in the community property settlement agreement,

and were not brought before, nor disposed of by, the court in the interlocutory order. She urges further that the doctrine of *Ambrose v. Moore, supra,* applies, and that she, as a tenant in common, is therefore entitled to one-half of the property designated by her as fraudulently concealed by the husband. We reaffirm the doctrine of the *Ambrose* case, and the many cases which follow it, but cannot agree with plaintiff, after a review of the record, that it is applicable here.

■ A careful reading of the property settlement agreement of April 3, 1945, discloses that it does not purport to name and to specifically identify all the community property. The phrase "Whereas, the community property *embraces* . . ." does not lead to the conclusion that that which follows is a list of *all* of the community property. To "embrace" is to include as part of a whole, and is not necessarily descriptive of the whole. The agreement provides that "the parties desire to settle *all property interests* and rights between themselves," and to that end, after giving certain named property to each, plaintiff "does herein relinquish all claims of any nature whatsoever to all community property acquired by the parties hereto *excepting that which has specifically been set off and awarded to her by this instrument.*" There is a striking similarity between the property settlement agreement in this case and the property settlement agreement in *Robinson v. Robinson, supra.* The latter provided: ". . . plaintiff does hereby renounce any interest in any of said property not specifically described in Paragraph 1 hereof." Of it we said:

"By the terms of the property settlement agreement and stipulation which became a part of the interlocutory decree, the respondent had renounced her interest in any property not specifically awarded to her, and all property not so awarded to her had been awarded to appellant; consequently, *there was no newly discovered property before the court for distribution.* See *Walker v. Walker,* 327 Mich. 707, 42 N.W. (2d) 790." (Italics ours.)

After careful consideration of the property settlement agreement and of the circumstances surrounding the entire

transaction, especially of plaintiff's desire to obtain thirty thousand dollars cash for her share of the community property, the conclusion is inescapable that the property now claimed by plaintiff as having been concealed from her, was in truth and in fact within the contemplation of the parties when the property settlement agreement was executed; that it was incorporated in the agreement; and was, thereafter, merged in, and disposed of by, the decree of divorce. Cf. *Bullock v. Parsons,* 192 Wash. 140, 73 P. (2d) 354. There is, therefore, "no newly discovered property before the court for distribution." All of the property was distributed by the court's approval of the property settlement agreement.

We hold that the property in which plaintiff now claims an interest was in fact disposed of by the interlocutory order of divorce.

This disposes of the plaintiff's contention that the cases of *Normile v. Denison,* 109 Wash. 205, 186 Pac. 305, and *Normile v. Denison,* 116 Wash. 452, 199 Pac. 995, are here controlling. In the first case, we held that a complaint stated a cause of action wherein the former wife alleged that, at the time she and her former husband had made a property settlement agreement, he had fraudulently represented that the assets described in the agreement constituted the entire community personal property, when, in fact, it did not. It was not alleged that the property settlement agreement had been approved by the court and incorporated into a decree.

Upon the trial of the case, it appeared that the divorce decree confirmed a division between the spouses of *the real property only.* The divorce court did not dispose of the personal property of the parties in any way. Hence, the wife was permitted to recover her one-half of the omitted community personal property.

There remains the question of whether plaintiff's complaint and evidence introduced in support of it constitute a collateral attack upon the interlocutory order and final decree of divorce.

Although plaintiff argues that this is not an action to set aside either the property settlement agreement or the decree into which the agreement had been incorporated, such would be the effect should plaintiff prevail, since we have already found that the property in which plaintiff asserts an interest, has been disposed of by the decree. In each of her eight causes of action, plaintiff alleged that "defendant wilfully and with intent to mislead the plaintiff, failed and neglected to disclose . . . [certain properties]." This allegation the trial court treated as an allegation of fraud.

In *Baskin v. Livers*, 181 Wash. 370, 43 P. (2d) 42, this court adopted the following rule:

" 'A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment, in respect to its validity, verity, or binding effect, by parties or privies, in any collateral action or proceeding, except for fraud *in its procurement.*' " (Italics ours.)

A collateral attack is an attempt to impeach the judgment by matters outside the record, in an action other than that in which it was rendered. *Treosti v. Treosti,* 168 Wash. 672, 13 P. (2d) 45; *Thompson v. Short,* 6 Wn. (2d) 71, 106 P. (2d) 720; *In re Peterson's Estate,* 12 Wn. (2d) 686, 123 P. (2d) 733; *Batey v. Batey,* 35 Wn. (2d) 791, 215 P. (2d) 694.

In *Farley v. Davis,* 10 Wn. (2d) 62, 116 P. (2d) 263, 155 A.L.R. 1302, we said:

"Moreover, when fraud is alleged as the basis for collateral attack upon a judgment or decree, the fraud alleged and sought to be established must be extrinsic or collateral to the issues tried in the proceedings which are attacked, or, as sometimes stated, *there must have been fraud in procuring the original judgment or decree.* [Citing authorities.]

" 'Extrinsic or collateral fraud,' justifying equitable relief against a judgment or decree, means some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy." (Italics ours.)

More recently we have held that a final judgment may be collaterally attacked if the fraud is extrinsic. *Ellis v. Schwank*, 37 Wn. (2d) 286, 223 P. (2d) 448; *Francon v. Cox*, 38 Wn. (2d) 530, 231 P. (2d) 265.

■ We hold that, as in *Farley v. Davis*, *supra*, no fraud has been alleged or proved by plaintiff as against defendant *extrinsic* of the merits of the questions involved in, and disposed of by, the interlocutory order and final decree of divorce, which approved the property settlement agreement made between the parties. There was no fraud in *the procurement* of the interlocutory order and final decree. Plaintiff's attack upon the interlocutory order and final decree is collateral and will not lie.

The instant case is squarely within our holding in *Bullock v. Bullock*, 131 Wash. 339, 230 Pac. 130. The plaintiff sued her former husband, alleging he had been guilty of fraud in inducing her to enter into a property settlement agreement and that, through fraudulent concealment of community assets, she had failed to receive half of the community property. At plaintiff's request, the property settlement agreement was incorporated into, and approved and confirmed by, the interlocutory order of divorce, which was later made final. We affirmed a dismissal of her action for equitable relief, saying:

"In the case at bar, appellant had alleged the contracts involved and had asked that they be confirmed as just and equitable, which was done. The adjudication thereon is, therefore, binding unless attacked and set aside in a direct attack in the divorce case. Such is not this case."

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and HAMLEY, JJ., concur.