[No. 34201.   Department Two.   September 26, 1957.]

HARRY R. BIDLAKE, *Appellant*, v. YOUELL, INC., *et al.*, *Respondents.*[1]

[1] Reported in 315 P. (2d) 644.

*Lenihan & Ivers* and *Donald D. Fleming*, for appellant.

*Bruce Maines* and *Carl P. Zapp*, for respondents.

HILL, C. J.—The important issues in this case are:

(1). Does the use, in an apartment house, of porcelain faucet handles, in which no defect is apparent in and of itself, establish liability of the owner and operator to a tenant who is injured when such a faucet handle breaks, on the theory of: (a) breach of an implied warranty of fitness; or (b) wanton misconduct; or (c) negligence.

(2). Does the fact that the owner and operator of an apartment house has knowledge of two people having been injured by the breaking of porcelain faucet handles, the two injuries being separated by some ten years, and that he knows or should know that their manufacture has been discontinued, constitute sufficient evidence of his knowledge that porcelain faucet handles are a dangerous instrumentality (assuming that there is evidence that they are a dangerous instrumentality) to take the issues of wanton misconduct or negligence to a jury?

Plaintiff, Harry R. Bidlake, sustained serious injuries in consequence of the breaking of a porcelain handle on the

kitchen faucet in the bachelor apartment he occupied in a building owned and operated by the defendant, Youell, Inc. Seeking damages for injuries sustained, he sued Youell, Inc., Thomas Youell, who supervised the operation of the apartment house, and Ruth Wilson Seckel, its resident manager, setting forth three causes of action based on the theories indicated *supra.*

At the conclusion of the plaintiff's case, the trial court took the case from the jury and entered an order dismissing all the causes of action. From this order, the plaintiff appeals.

We assume the existence of a landlord and tenant relationship between the plaintiff and the defendant Youell, Inc. The plaintiff urges that he was a guest in a hotel room, and that the relationship was not that of landlord and tenant.

The evidence on the question of status is that, while some transient guests were from time to time accommodated in the building where the plaintiff was living, it was always under special circumstances and not as a practice or policy. The plaintiff paid his rent in advance on a month-to-month basis and understood that he had to give a thirty-day notice of termination. There were cooking facilities, including a stove and a refrigerator; linens, dishes, and silverware were also furnished. Maid service was available at an additional charge. Plaintiff availed himself of the maid service, on an hourly basis, at least once a week and sometimes oftener.

It was agreed by both parties that the relationship was not an issue of fact, but of law, and the trial court decided and, if it be material, we believe correctly, that the plaintiff occupied an apartment and that the relationship was that of landlord and tenant.

Concerning the theory of the implied warranty of fitness, the trial court in its well-reasoned and comprehensive oral opinion said:

"I don't believe that the Supreme Court has laid down a doctrine of implied warranty of fitness in cases where there is no negligence, that is, as applying to a landlord and tenant relationship. I am satisfied that the consequences of such a doctrine would be very far-reaching. If the Court should now announce and it should be affirmed by the Supreme

Court I think that it would be the practical result of impos-
ing an unforseen and unforseeable liability on the part of
many people after their positions have been committed
without any possibility of defense against such liability. It
is all right for the legislature to declare a new policy and
new duties and a new liability as to transactions in the
future, but when a court undertakes to lay down a new rule
of liability it does it with retrospect in the specific case and
sometimes the consequences are very unwise."

■ We have limited the theory of implied warranty of
fitness or suitability to sales of personal property, including
food and, under certain circumstances, raiment. As between
a tenant and a landlord, where there is no fraud or false
representation and no express warranty or covenant, we
have rejected the theory of an implied warranty. *Conradi v.
Arnold* (1949), 34 Wn. (2d) 730, 209 P. (2d) 491.

The opinion in *Forrester v. Hoover Hotel & Investment
Co.* (1948), 87 Cal. App. (2d) 226, 231, 196 P. (2d) 825, uses
language which is very apropos of the present situation:

"We are persuaded that to hold the landlord liable upon
warranty for any injury resulting from a latent defect in the
equipment or furnishings leased with a furnished apartment
would be to make the landlord virtually an insurer of the
safety of the tenant. We are satisfied that the correct rule,
supported in this state by a long line of decisions, is that a
landlord is not liable to the tenant for injuries due to a
defective condition or faulty construction of the demised
premises, in the absence of fraud, concealment or covenant
in the lease (*Shotwell v. Bloom,* 60 Cal. App. 2d 303, 309
[140 P.2d 728]; *Colburn v. Shuravlev,* 24 Cal. App. 2d 298,
299 [74 P.2d 1060])."

Of the theory of wanton misconduct, the trial court said:
"I don't think there is any case based on wantonness. I just
don't see the merit of that point."

■■ Wanton misconduct is positive in nature; it is such
as puts the actor in the class with the willful wrongdoer.
*Adkisson v. Seattle* (1953), 42 Wn. (2d) 676, 258 P. (2d)
461. To constitute a willful and wanton injury, the act
which produced it must have been knowingly and inten-
tionally committed, or it must have been committed under
such circumstances as to evince a reckless disregard of the

safety of the person injured. *Price v. Gabel* (1931), 162 Wash. 275, 298 Pac. 444.

█ It is true that metal has very generally replaced porcelain as faucet handles, but, as the evidence indicates and it is common knowledge, porcelain handles are still frequently used in older homes, apartments, and hotels, and have been used throughout the years without fear of possible harmful consequences. Unless it could be found that defendants knew, or should have known, that there was a high degree of probability that substantial bodily harm would result to another from the use of a porcelain faucet handle, there can be no recovery on the theory of wanton misconduct. *Adkisson v. Seattle, supra.* We find no evidence to support such a finding.

We turn now to the theory of negligence. There is no evidence or even contention that any amount of inspection would have revealed any defect in the porcelain faucet handle which broke. The plaintiff's case, on the theory of negligence, must rest on the twofold proposition that it was unreasonably dangerous to use a porcelain faucet handle, and that one or more of the defendants knew it to be so.

On this phase of the case, the trial court said:

"I do think that the evidence warrants the conclusion, would warrant a jury in finding, if that issue were submitted, that the landlord assumed the duty to repair. If that was the duty, then it must be discharged with reasonable care. I don't find any evidence of a failure to discharge the duty to repair, so far as the plaintiff is concerned. All the evidence is that the handle which broke had no apparent defect in it. The break was a clean one. No evidence of any pre-existing crack. Let us assume that it was the duty of the defendant to send its maintenance man into this particular apartment and inspect it on the day in question before the accident happened. If he had looked at this handle ahead of time there is nothing in the evidence to suggest that he would have found anything to repair. The only claim that can be made is that he would have seen that it was a porcelain handle, that he should have known what the plumbing manufacturing industry knew, that these things sometime break, and if they break an accident could happen, and therefore, should have changed it at that

moment. The plaintiff is almost in that position. Of course, the timing wouldn't be so specific, but the plaintiff's argument is that since the porcelain handles were not on the market it should have known what the plumbing industry knew when it decided to quit manufacturing. It is almost that blunt, and I don't think that the apartment house industry or the construction industry is chargeable with that much knowledge, particularly an apartment house operator. The evidence is undisputed that at the time this place was built porcelain handles were accepted practice. There is no evidence that there is any widespread effort to take them out where they have been installed nor any educational program to dissuade their use.

"I don't see how we can say that a jury would be. warranted on this evidence in finding that the defendants failed to exercise ordinary care under the circumstances. The evidence of the Kuney accident, which comes from a disinterested witness and is therefore binding on both parties, is that he made no claim of negligence on the part of the defendants at that time, and that handle admittedly broke when it was struck, and that was demonstrated to the jury. It was struck with the hand. And it is the only accident shown to have occurred in connection with the broken faucet handle in the defendant's apartment over a long period of years. And there are a large number of handles involved, something like one hundred and sixty-odd units with anywhere from six to eight porcelain handles in each apartment unit. That is very close to a thousand handles. And over a period of years only two accidents, the first one is when it was struck.

"Now, assume that the jury could find only normal pressure was applied. There is a dispute in the case on that. But assume that the jury should find that way, still they don't have any right, I think, to find that there was such notice of this danger to the defendants before this accident that there was a duty upon them to replace all handles, and I think you pretty near have to find such a duty before you can find liability here."

We agree with the trial court that the plaintiff failed to furnish sufficient evidence to sustain a finding by the jury that any of the defendants knew that it was unreasonably dangerous to use porcelain faucet handles, assuming that they are a dangerous instrumentality.

The case of *Doherty v. Arcade Hotel* (1943), 170 Ore. 374, 134 P. (2d) 118 is squarely in point, and there it is said:

"The basic facts upon which the plaintiff depends are that porcelain handles were obsolete when the injury occurred and that safer equipment was available.
"   . . .
"The march of science and art and the development of modern improvements bring in their wake negligence litigation based upon contentions similar to the one now before us.
"   . . .
"A finding of negligence could be warranted only in the event that the evidence shows that a reasonably prudent hotelkeeper, in an endeavor to take due precautions for his guests' safety, would have known that the use of porcelain handles unreasonably subjected his guests to danger and that metal handles were not only available but also safer.
"   . . .
"We remind ourselves that (1) the handle which injured the plaintiff was, so far as porcelain handles are concerned, of standard make and design; (2) no finding is warranted that it displayed any indications whatever of an impending fracture; (3) there is no evidence that anyone outside of the plumbing industry and those injured by the breakings knew that porcelain handles acted in the manner described by the four aforementioned plumbers; (4) at least one other hotel in Klamath Falls, the Willard, (larger than the defendant's), used porcelain handles; and (5) the plaintiff's brief does not contend that the defendant failed to inspect properly the equipment of its rooms.
"From the evidence before us, it is apparent that porcelain handles are in common use. One of the handles is before us as an exhibit. Of itself, it looks harmless. Undoubtedly our hands and those of every adult person have touched hundreds of them. It comes as a shock to be told that we have been so many times unwittingly subjected to danger.
"   . . .
"We do not believe that the record contains any evidence showing that common experience condemned porcelain handles as dangerous.
"9. Since the defendant had no express knowledge that porcelain handles were dangerous, and since the evidence failed to indicate that common experience showed them to be dangerous, the charge made in the complaint that the

defendant was negligent was not supported by substantial evidence. The record does not warrant a finding that the defendant should have replaced its porcelain handles with metal ones. It, therefore, follows that the motion for a directed verdict should have been allowed. For that reason, the judgment of the circuit court is reversed."

The plaintiff places great reliance on *Cottmire v. 181 East Lake Shore Drive Hotel Corp.* (1947), 330 Ill. App. 549, 71 N. E. (2d) 823, which is an innkeeper and guest case. But even so, the requirements of notice and knowledge on the part of the innkeeper, which the Illinois court indicated were requisite to a recovery by the guest, have not been met by the evidence offered by the plaintiff in this case.

The plaintiff further urges that RCW 4.44.050 makes mandatory the entry of findings of fact and conclusions of law upon which the judgment of dismissal is based.

█ This being a jury case, the test to be applied in examining the judgment of dismissal is whether there is any evidence or reasonable inference from evidence which will sustain plaintiff's case. *Pearsall v. Paltas* (1955), 48 Wn. (2d) 78, 291 P. (2d) 414; *Gentry v. Greyhound Corp.* (1955), 46 Wn. (2d) 631, 283 P. (2d) 979.

The trial court, in granting the judgment of dismissal, was not weighing the evidence. It recognized that the evidence was conflicting on certain issues, but its position was that, assuming the truth of all the evidence offered favorable to the plaintiff, there was no evidence from which the jury could have found that any of the defendants knew or should have known that it was dangerous to use porcelain faucet handles. If there was not sufficient evidence to take that issue to the jury, there could be, as a matter of law, no finding of either negligence or wanton misconduct. It was, of course, patent that the holding with respect to any implied warranty of fitness determined an issue of law.

█ Where, as here, the trial court treated the plaintiff's evidence as true and held, as a matter of law, that plaintiff has not established a *prima facie* case, findings of fact are unnecessary. *Richards v. Kuppinger* (1955), 46 Wn. (2d) 62, 278 P. (2d) 395.

The injuries sustained by the plaintiff were serious, and their treatment and care were expensive.  We may assume, as he testified, that he was in no way to blame for the breaking of the porcelain faucet handle.

The trial court could not find, nor can we, any evidence of fault or negligence on the part of the defendants.

It may well be that the owner of the apartment is better able to sustain the monetary loss involved than is the plaintiff, but we are not justified in imposing liability without fault by an extension of the theory of an implied warranty of fitness to the landlord-tenant relationship; that, as the trial court suggests, involves a question of public policy for the legislature.

The judgment of dismissal, as to all causes of action, is affirmed.

DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

---

November 23, 1957.  Petition for rehearing denied.