[No. 39983.    Department Two.    October 24, 1968.]

MARION ROGSTAD, *Respondent*, v. THOMAS D. ROGSTAD, *Appellant*.*

*Reported in 446 P.2d 340.

*MacDonald, Hoague & Bayless* and *Kenneth A. Mac-Donald,* for appellant.

*Sullivan, Guterson, Rindal & Rousso* and *Lewis Guterson,* for respondent.

RUMMEL, J.†—There is nothing unusual about this divorce action except the manner of the acquisition of the property and its status at the time of the trial. After 18 years of marriage the appellant husband apparently grew tired of the company of his wife and sought diversion in the association with another woman. He moved out of the home and left the care of their three children, ages 15, 13, and 11 years to his wife, although he did make payments for the support of the family. The divorce was granted to the plaintiff-respondent wife, but the matter of fault is an issue herein only to the extent it may have influenced the trial judge in the division of the property of the parties. The only error urged on appeal is that the trial court was guilty of an abuse of discretion in the manner in which it awarded a larger share of the property to the wife than to the appellant.

This court, in the case of *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 433 P.2d 209 (1967), has specifically delineated the guidelines to be followed in dividing the property in a divorce action. Although prior cases have likewise included statements of the principles to be applied to the varying situations revealed in the trial of divorce cases, the following quotation from *DeRuwe,* at 404, effectively sums up the factors to be considered:

> Although the division of community property need not be exact, but just and equitable (*Robuck v. Robuck,* 62 Wn.2d 917, 385 P.2d 50 (1963)), with a wide latitude resting in the trial court's discretion to make the division

---

†Judge Rummel is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

(*Bodine v. Bodine,* 34 Wn.2d 33, 207 P.2d 1213 (1949)), more specific principles are available to aid the court in arriving at a just and equitable division in particular cases. First, the court must consider the necessities of the wife and the financial ability of the husband. *Hogberg v. Hogberg,* 64 Wn.2d 617, 393 P.2d 291 (1964). Then, it should take into consideration the age, health, education and employment history of the parties and their children, and the future earning prospects of all of them. The court should, likewise, give thought to the sources and dates of acquisition of all properties accumulated by the parties during marriage and what properties each brought into or contributed to the community property, along with the amounts and kinds of property left to be divided at the divorce. Even when regard is had for the fault of the parties and the wrong inflicted by the one upon the other, it is the economic condition in which the decree will leave the parties that engenders the paramount concern in providing for child support and alimony and in making a property division. *Stacy v. Stacy,* 68 Wn.2d 573, 414 P.2d 791 (1966).

Not to be ignored is the question of fault. *Stacy v. Stacy,* 68 Wn.2d 573, 414 P.2d 791 (1966).

Thus, in making a division of the property the law does not impel an equal or exact division of the community property of the parties. The disposition only need be just and equitable, and wide latitude and discretionary powers are vested in the trial court in order to accomplish this division. Only a manifest abuse of that discretion justifies this court in substituting its judgment for that of the trial court. *Robuck v. Robuck,* 62 Wn.2d 917, 385 P.2d 50 (1963).

■ This court is most reluctant to substitute its evaluation and judgment for that of the trial judge, and will do so only when inequity and injustice are apparent beyond simply an honest difference of opinion, and it can be said that an abuse of judicial discretion is clearly manifest on the part of the trial judge. *Root v. Root,* 64 Wn.2d 360, 391 P.2d 962 (1964).

With these principles in mind, the facts can next be examined. Appellant, 41 years of age, is a college graduate, and has worked for years managing radio and television

stations. His yearly salary at the time of the trial was $16,000. Respondent, 36 years of age, was not trained for any particular employment; she has not been employed for 16 years.

The respondent's mother, Mrs. Janders, owned property on Renton Avenue between Seattle and Renton. In 1963, in order to enable the parties to construct an apartment house, she conveyed a portion of this property to them at a consideration of $43,500, evidenced by a note and an unrecorded mortgage. Mrs. Janders had been offered as much as $55,000 for this property. Another mortgage of $160,000 was executed by the Rogstads to build the apartment on the property. This mortgage was payable at $1,581 per month, at 6¼ per cent interest per annum, the payments to include the interest, the taxes, and the insurance. The balance due on this mortgage as of March 1, 1967 was $146,322.02. Also executed was an assignment of rents to further secure this construction mortgage.

An additional mortgage in the amount of $20,000 was executed to obtain funds for appliances. This was payable at $366.67 a month and the note bore interest of 12 per cent per annum. As of March 1, 1967, the balance on this loan was $13,056.46. Both of these subsequent mortgages had priority over the mortgage given to respondent's mother.

Mrs. Janders loaned $1,700 to pay the architect, making a total of $47,409.15 owed her, which has been reduced to $43,959.15. Since the completion of the apartment, she has lived in it and has handled the rentals, complaints, and minor repairs and servicing, for which she receives a $125 per month apartment rent free.

The respondent wife has kept the books, performed much of the janitorial work and generally supervised the project. All concerned, including the children and the appellant, have from time to time performed necessary labor about the building and the grounds.

At the time of the trial, the apartment was appraised for $277,780, plus $2,000 for drapes and rugs. These

amounts, less obligations totaling $203,400, left a gross equity of $73,600.

The parties also owned a house appraised at $42,000 and encumbered by a mortgage of approximately $35,000, payable at $230 per month, plus taxes and insurance. They also owned a one-half interest in vacant property in Kirkland, valued at $18,000, against which was owed a balance of $3,400, payable at $100 per month. The entire payment on this property since August, 1966 had been made by the co-owners. The equity of the parties here was approximately $7,300.

The court awarded these three properties to the wife. The husband was given a lien of $25,000 on the apartment, payable in 5 years and bearing 1 per cent interest the first year, but increasing 1 per cent each year thereafter. The appellant was further given a lien of $2,000 on the Kirkland property payable in 5 years and bearing interest at 4 per cent per annum.

Respondent was given a station wagon with an equity of between $200 and $500, and the household furniture. In addition to the liens of $27,000 allowed to appellant, he was awarded an automobile with no indebtedness against it and worth $700, shares of stock valued at $160, and life insurance stipulated as worth $1,300.

Appellant was required to pay $150 per month for support of each child for 1 year and $125 per month thereafter. Respondent was required to pay her own attorney fee. Appellant was further ordered to pay an $800 loan, and to maintain certain policies of insurance with the children as beneficiaries.

The total net value of the community is fixed by the appellant at $108,649.52, but the respondent claims a documented value of $91,110 and that actually the division is 31 per cent to appellant and 69 per cent to respondent. She also contends that other than the value represented by the apartment, the community property would net but $16,310, but that he received a net of $27,150.

In addition to the overall division of the property, the appellant objects to certain conclusions of the trial court. In its memorandum opinion, this court stated that by the giving of a deed without any money payment, and by permitting the two mortgages to be prior to hers, the respondent's mother enabled the parties to finance the construction and the furnishing of the apartment, and that the value of the community property over and above $20,000 came about through this act of Mrs. Janders in lending the credit of her property to the community. In our opinion this observation by the trial court, as the trier of the facts, was warranted by the evidence in the case.

Although the apartment is now in an area where there is much demand, the court commented that conditions might not always be so favorable, and also that the wooden construction of the apartment would cause it to have a faster rate of depreciation than if it were built of concrete or brick. In view of the three large mortgage balances payable over a long period of time, again the trier of the facts could take such factors into consideration in exercising the wide discretion allowed him.

An element considered by the trial court, which could substantially change the percentage of the property awards, is that to convert the property awarded to the wife to cash would cost an estimated $30,000. The court apparently arrived at this figure by an estimate of 7½ per cent for a real estate broker's commission, 1 per cent for the statutory tax on the vendor imposed by RCW 28.45.050, and 2 to 3 per cent cost for financing a sale. There is no question but that the court could take judicial notice of the statutory tax; but could it take notice of the other costs of sale? The traditional rule is that courts may take judicial notice of facts which are within the common knowledge of the community.[1] The modern trend seems to have enlarged this conception to state that a fact may be noticed if it is verifiably certain by reference to competent, authoritative

---

[1] 31 C.J.S. *Evidence* § 9, at 824 (1964).

742

sources.[2] This court has accepted the broadened scope of judicial notice. *State ex rel. Humiston v. Meyers,* 61 Wn.2d 772, 380 P.2d 735 (1963).

Courts will take judicial notice of the facts of business and occupations, such as the general course of business and the usual methods of transacting it. 31 C.J.S. *Evidence* §§ 28, 29.

The following are examples of the exercise of judicial notice in Washington. That sidewalks of a grade equal to 13 per cent are common in cities of the state and had not been prohibited by legislation, *Dougan v. Seattle,* 76 Wash. 621, 136 Pac. 1165 (1913); that floors in manufacturing plants last upwards of 20 to 40 years, *Frank D. Black, Inc. v. Crescent Mfg. Co.,* 146 Wash. 119, 262 Pac. 125 (1927); general customs of banks in making collections and remitting therefor, *Ryer Grain Co. v. American Security Bank,* 147 Wash. 42, 264 Pac. 1000 (1928); that a wet road fill becomes more stable as it dries, and that pressure on a bulkhead decreases, *Strong & MacDonald, Inc. v. King Cy.,* 147 Wash. 678, 267 Pac. 436 (1928); the value of wheat within broad limits, *Commercial State Bank v. Palmerton-Moore Grain Co.,* 152 Wash. 89, 277 Pac. 389 (1929); the change in the purchasing power of a dollar, *Kellerher v. Porter,* 29 Wn.2d 650, 189 P.2d 223 (1948); *Thompson v. Seattle,* 35 Wn.2d 124, 211 P.2d 500 (1949); that porcelain faucet handles are still frequently used in older homes, apartments, and hotels and have been used throughout the years without fear of possible harmful consequences, *Bidlake v. Youell, Inc.,* 51 Wn.2d 59, 315 P.2d 644 (1957); that insurance rates for $7,500 of life insurance for a man 39 years of age would be two or three times premium paid for policy issued to cover a mortgage to a savings and loan association, *Hein v. Family Life Ins. Co.,* 60 Wn.2d 91, 376 P.2d 152 (1962); and the phenomenal growth of Bellevue after the installation of the floating bridges across Lake

---

[2] Giudice & Kraft, *The Presently Expanding Concept of Judicial Notice,* 13 Vill. L. Rev. 528, 532 (1968).

Washington, *Bellevue School Dist. No. 405 v. Lee,* 70 Wn.2d 947, 425 P.2d 902 (1967).

The footnotes to §§ 28 and 29 of 31 C.J.S. *Evidence, supra,* contain a multitude of further examples of judicial notice. Although too numerous to specifically mention, these examples are very convincing that the courts have very broad authority to avoid unnecessary proof of established facts.

Because judicial notice obviates the necessity of proof it reduces trial time and thus tends to relieve court congestion.[3]

■ The trial judge was within the proper confines of judicial action in taking notice of the cost of reducing the real estate to cash. Although the percentages used may not have been exact and too high, nevertheless it is common knowledge that real estate commissions, title insurance premiums, and other incidental costs are within a certain range of expense. Even though a sale might be effected without paying a commission, the court could consider this as a contingency. Such expenses could amount to one-third to one-half of the equities awarded to the respondent.

Considering the relative education and earning capacity of the parties, the future welfare of the children, the uncertainties connected with the retirement of the indebtedness, the substantial contribution of the mother of the respondent, both in selling at a reduced price and in risking her property, the fault of the appellant and other factors suggested by the situation, this court cannot say there was a manifest abuse of discretion on the part of the trial court.

Affirmed.

HILL, HUNTER, HAMILTON, and NEILL, JJ., concur.

---

[3]Giudice & Kraft, *supra* note 2, at 562.