[No. 2168–3. Division Three. August 31, 1978.]

*In the Matter of the Marriage of* R. MAHALINGAM, *Appellant, and* ROSE MARIE MAHALINGAM, *Respondent.*

*David W. Henault* and *John B. Hancock,* for appellant.

*Howard Neil* (*William Buchanan* and *Marc S. Stern, Legal Interns*) of *Pullman Legal Aid Society,* for respondent.

MUNSON, C.J.—Dr. R. Mahalingam, petitioner, appeals the child custody, support and attorney's fees provisions of a dissolution decree. We affirm.

The parties were married in 1967. In February of 1975, after a fairly tumultuous relationship, they entered into a separation agreement, which, among other things, gave petitioner custody of their only child. A default decree of legal separation was entered May 15, 1975. In December, the petitioner unsuccessfully moved ex parte to transform the legal separation decree into one of dissolution. The matter was continued by the court so that respondent could be notified of petitioner's motion. After receiving notice,

respondent cross–petitioned for dissolution and modification of the custody provisions of the separation agreement. The court vacated the custody provisions of the legal separation decree and dissolved the marriage.

██ The first issue is whether, after the passage of 6 months and upon the ex parte motion of petitioner, the superior court must change a legal separation decree into a dissolution decree. Petitioner contends RCW 26.09.150 mandates an affirmative answer. We disagree. Notice and the opportunity to be heard on matters which materially affect a litigant's rights are essential elements of due process that may not be disregarded. *Cf. Esmieu v. Schrag,* 15 Wn. App. 260, 264, 548 P.2d 581 (1976), *aff'd,* 88 Wn.2d 490, 497–98, 563 P.2d 203 (1977). The rules of civil procedure which govern proceedings under RCW 26.09 provide that the moving party should give at least 5 days' notice of a hearing on a motion to the nonmoving party. CR 6(d). Although the time limit is not jurisdictional (*Loveless v. Yantis,* 82 Wn.2d 754, 513 P.2d 1023 (1973)), notice to the respondent may not be dispensed with. Consequently, the court was justified in refusing to proceed without appropriate notice to the respondent.

██ The second issue is whether there was sufficient evidence to warrant vacation of the default decree of legal separation because of fraud. Based upon conflicting evidence, the court found that Dr. Mahalingam overreached, defrauded and overtly coerced respondent into signing a separation agreement; and that the court which had approved the separation agreement and its concomitant custody provisions was unaware of Dr. Mahalingam's conduct and as a result believed that the agreement was a mutual decision of the parties. Our review of the record satisfies us there is more than sufficient evidence to support such finding and we will not undertake a reevaluation of the credibility of the witnesses. *State v. Hoffman,* 64 Wn.2d 445, 450, 392 P.2d 237 (1964). As observed in *State v. Reed,* 56 Wn.2d 668, 678, 354 P.2d 935 (1960), quoting from *In re Estate of Martinson,* 29 Wn.2d 912, 190 P.2d 96 (1948):

"'A trial judge is much more than a commissioner named to take and collect evidence in a case. He is a judicial officer provided for by our constitution, and the laws of this state. He has had years of experience as a trial lawyer, and as a judge. . . . The credibility of the witnesses, and the force of their testimony, and the weight that should be attached to it, are all matters concerning which the trial judge is the best judge.'

Assuming there was sufficient evidence to warrant the entry of the challenged finding, petitioner then contends, citing *Sears v. Rusden,* 39 Wn.2d 412, 235 P.2d 819 (1951), and *Baskin v. Livers,* 181 Wash. 370, 43 P.2d 42 (1935), that only extrinsic fraud, *i.e.,* fraud in procuring the legal separation decree, is sufficient to warrant vacation of that decree. We disagree. The cases relied upon by petitioner were decided prior to the adoption of CR 60(b)(4), which permits vacation for "Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party".

We find no merit in petitioner's contentions that: (a) respondent's cross petition and answer did not comport with the requirements of CR 60(e)(1), and (b) the trial court erred in not setting a time and place for hearing and directing the petitioner to appear and show cause why the relief should not be granted as required by CR 60(e)(2). The cross petition and answer and respondent's affidavit, save for the title of the pleadings, satisfied CR 60(e)(1). The course of action urged by petitioner, relying on CR 60(e)(2) would be nonsensical in light of the posture the case assumed upon respondent's filing of her cross petition and answer.

The third issue, whether the trial court should have entered findings of fact as to the elements of RCW 26.09-.260 when it granted the respondent custody and vacated the decree of legal separation, is disposed of by the fact that the efficacy of the legal separation decree was entirely nullified by vacation, *i.e.,* the parties are left in the position as if no decree had been entered. *Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967). Hence, the award of child

custody in the dissolution decree was not a change of custody within the purview of RCW 26.09.260.

The fourth issue, whether the court considered the factors outlined in RCW 26.09.190 in awarding respondent custody, has no basis in the record. The wishes of the parents were amply demonstrated to the court by the positions urged at the two hearings on the dissolution petitions. Experts for both parties, as well as laymen, testified as to the child's interactions with his parents, his adjustment to his home, school and community, as well as his mental and physical health. There was no issue raised as to the mental or physical health of the parties. The fact that the trial court did not consult the child does not vitiate the award, particularly in light of the strained relationship between the parties and the age of the child.[1]

Petitioner contends the court should have considered the cultural dissimilarity between the respondent and child. There was substantial evidence that respondent, though a Caucasoid European, was extremely interested in preserving and fostering the child's appreciation for his Caucasoid–Indian heritage. The cultural factor was thus considered by the court.

The fifth issue, whether the trial court erred in requiring petitioner to pay $200 per month support, plus 20 percent of the net increase in salary he may receive from his employer or another employer should he change jobs, plus 10 percent of the net income[2] he may receive from any other source,[3] must also be determined adversely to the

---

[1]The child was approximately 7 1/2 years old at the time of the hearing.

[2]The trial court did not define the terms "net income" or "net increase." Neither party has contended that either term is overbroad; therefore, we assume for the purpose of this opinion, the former means gross income less related expenses and taxes, and the latter means gross salary increase less related mandatory deductions.

[3]The challenged provision reads as follows:

"(B) That the amount of child support shall also be contingent upon the below–listed conditions:

"(1) That for every increase in petitioner's net monthly earned income from Washington State University or should he change employers, from those sources

petitioner. Petitioner contends such an open–ended escalation award exclusively and impermissibly focuses on the circumstances of the paying parent while ignoring the complex factors relating to the needs of the child and the ability of the mother to pay support.

█ We are cognizant that there exists authority in support of petitioner's contention,[4] however, other jurisdic-

---

of earned income, that twenty (20) percent of petitioner's increase in net monthly earned income be added to the $200 child support payment. That, in addition, petitioner shall every six months starting on October 1, 1976, and continuing thereafter for the duration of the child support obligation, file with the registry of this court an affidavit stating his net annual earned income, stating the amount of net annual earned increase thereto; stating the amount of his net monthly earned income, and stating the amount of his net monthly earned income increase thereto.

"(2) That for all additional income from other sources of income, in addition to those described in 4(A) and (B)(1), supra, petitioner shall pay ten (10) percent of the net thereof, as additional child support, and shall file every six months with the registry of this court, starting October 1, 1976, and continuing through the support period, an affidavit, stating the amount of all net additional annual earned income and stating the ten (10) percent thereof."

[4]In *Di Tolvo v. Di Tolvo*, 131 N.J. Super. 72, 77, 328 A.2d 625, 75 A.L.R.3d 484 (1974), the court held:

The advance determination by the court . . . of an automatic increase in alimony is contrary to established principles relating to alimony and the modification thereof. Moreover, it makes it difficult if not impossible, for the court to enforce increases in later proceedings . . .

In *McManus v. McManus*, 38 Ill. App. 3d 645, 647, 348 N.E.2d 503 (1976), the court held that a nonpercentage escalation clause was improper, stating:

In ordering the payment of child support, a circuit court must consider the needs of the child, the separate income of the wife, and the income of the husband. . . . Because changes in these facts cannot be anticipated with accuracy, a circuit court should ordinarily not try to anticipate such changes by making its award of child support to increase automatically with the child's age.

In *Picker v. Vollenhover*, 206 Ore. 45, 72, 290 P.2d 789 (1959), the court refused to enforce an Illinois decree containing an escalation provision, stating:

At the time of divorce the court should not lay down rules for the future whose propriety would depend on circumstances materially different from those shown by the evidence and which can not reasonably be predicted from the evidence. In particular, it should not in the original decree provide for future changes in the quantum of support based on the single criterion of the change in the amount of the earnings of the defendant. . . .

To adopt as an Oregon decree sliding–scale provisions for the future which are geared to a single one of the circumstances which are relevant to show changed conditions would be contrary to the established policy of this state . . .

234

tions have approved escalation clauses.[5] We believe in these times of economic uncertainty where rampant inflation[6] quickly diminishes the effective amount of support, the use of a reasonable escalation provision is not violative of either RCW 26.09.100[7] or RCW 26.09.170.[8] Under

In *Breiner v. Breiner,* 195 Neb. 143, 146, 236 N.W.2d 846 (1975), the court struck down an escalation provision based on annual bonuses, stating:

> The need for computation itself is not objectionable, but an extraneous fact unknown until the end of the year, that is, the amount of the bonus, is necessary to compute the amount of child support. Executions could not be issued by the clerk of the District Court without a hearing to obtain information from an employer about the amount of appellant's bonus, so as to ascertain the exact amount due and the amount for which execution should be levied.

In *Stanaway v. Stanaway,* 70 Mich. App. 294, 245 N.W.2d 723 (1976), the court struck down an escalation clause stating:

> [I]t abrogates the requirement for [a petition to modify] by allowing the continual (here, yearly) alteration of the judgment as to amount of support. Second, and more important, it focuses exclusively on the "circumstances" of the paying parent while ignoring the complex of factors relating to the "benefit of the children" and their changing or unchanging needs.

[5] *Elbinger v. Elbinger,* 33 Mich. App. 166, 189 N.W.2d 823 (1971); *Vollenhover v. Vollenhover,* 4 Ill. App. 2d 44, 123 N.E.2d 114 (1954); *Golden v. Golden,* 230 Ga. 867, 199 S.E.2d 796 (1973); *Condy v. Condy,* 328 Ill. App. 8, 65 N.E.2d 219 (1946); *cf. Viles v. Viles,* 316 F.2d 31, 34 (3d Cir. 1963); *Foreman v. Foreman* 234 Ga. 646, 217 S.E.2d 257 (1975); *Scheldrup v. Gaffney,* 243 Iowa 1297, 55 N.W.2d 272 (1952); *Anneberg v. Anneberg,* 367 Mich. 458, 116 N.W.2d 794 (1962). On three occasions our Supreme Court has approved escalation clauses agreed upon by the parties. *Jensen v. Jensen,* 54 Wn.2d 473, 341 P.2d 882 (1959); *Dillon v. Dillon,* 21 Wn.2d 311, 150 P.2d 594 (1944); *Verde v. Verde,* 78 Wn.2d 206, 471 P.2d 84 (1970).

[6] In *Collins v. Collins,* 12 Wn. App. 850, 855, 532 P.2d 1185 (1975), this court aptly noted there was a period of "near unprecedented inflation" in the early 1970's. That condition has not abated at the present time.

[7] "26.09.100 Child support—Apportionment of expense. In a proceeding for dissolution of marriage, legal separation, declaration of invalidity, maintenance, or child support, after considering all relevant factors but without regard to marital misconduct, the court may order either or both parents owing a duty of support to any child of the marriage dependent upon either or both spouses to pay an amount reasonable or necessary for his support."

[8] "26.09.170 Modification of decree for maintenance or support, property disposition—Termination of maintenance obligation and child support—Grounds.

the former statute, it was incumbent upon the superior court to award child support which would satisfy the reasonable needs (both present and foreseeable) of the child in light of the present economic circumstances, as well as the future economic prospects of the parents, their earning capacities, and the family unit's predissolution standard of living. *Puckett v. Puckett,* 76 Wn.2d 703, 458 P.2d 556 (1969). In the instant case, the trial judge, a resident in the county where Washington State University is located, was well aware that the legislature over the last several sessions has granted periodic cost of living increases to those employed in higher education. He was also aware that those in the petitioner's position as a Professor of Engineering often receive income from outside sources, *e.g.,* consultation fees.[9] Additionally, the record clearly discloses that respondent's present and future employment prospects were considerably less than the petitioner's. Hence, we find no abuse of discretion when the court, after considering the needs of the child, the sources of income then available or foreseeably available to the parents, concludes that an open-ended escalation clause would reasonably assure the child of his present as well as his foreseeable economic well-being.

Except as otherwise provided in subsection (7) of RCW 26.09.070, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of a substantial change of circumstances. The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

"Unless otherwise agreed in writing or expressly provided in the decree the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

"Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child or by the death of the parent obligated to support the child."

[9]The court is entitled to take judicial notice of facts commonly known. *Rogstad v. Rogstad,* 74 Wn.2d 736, 446 P.2d 340 (1968); *Thompson v. Seattle,* 35 Wn.2d 124, 211 P.2d 500 (1949); *Kellerher v. Porter,* 29 Wn.2d 650, 189 P.2d 223 (1948); *Hardcastle v. Greenwood Sav. & Loan Ass'n,* 9 Wn. App. 884, 516 P.2d 228 (1973).

The award does not impugn the efficacy of the latter statute since petitioner may at any time seek modification of the support award should a change occur in the circumstances which the court relied upon for the original decree of support.[10]

Additionally, we find no merit in the ancillary ground for challenging the escalation clause, *i.e.*, the difficulty in determining amounts should petitioner not pay as directed. Experience clearly shows that even with a decree wherein a definite amount for support is set, enforcement proceedings often require an accounting to determine if, in fact, all payments have been made as directed, wholly missed, or only paid in part.

■ The final assignment of error, the awarding of $1,000 attorney's fees, plus costs of $180 to the respondent is without merit. We find no abuse of discretion in the trial court's award. It is undisputed that although the respondent was not destitute, the petitioner was in a far better position to pay the attorney's fees, not only because of his economic position, but also because he received a substantial portion of the community assets of the parties far in excess of the $3,500 awarded the respondent. *In re Marriage of Hadley*, 88 Wn.2d 649, 565 P.2d 790 (1977).

The decree of dissolution is affirmed; however, in light of the respondent's request for attorney's fees and costs on appeal, this matter is remanded to the Superior Court for the determination of the appropriate amount.

McINTURFF, J., concurs.

ROE, J. (concurring in part; dissenting in part)—I concur in the result of the majority opinion except that portion relating to the automatic percentage escalation of support for the minor child. Ample authorities support my position,

---

[10]In fact, the use of escalation clauses appears to be consonant with public demand to reduce the need for people to continually return to court to modify support decrees, as well as the present trend of the judicial system to devise acceptable methods of judicial economy.

as cited in the majority's footnote 4. Critical is the fact that there was no finding that support as presently ordered is inadequate. Presumably it is not; thus, this case must be distinguished from the many where a temporarily diminished amount is allowed to permit payment of creditors, recovery of health, or a job, etc. In such cases an adequate amount for support may simply be unavailable, and the courts will automatically escalate payments to an adequate level when it becomes feasible. Here the majority approves imposition of an automatic increase, unlimited in time, at a fixed percentage of the father's prospectively increased income, regardless of the child's needs, the mother's income, the father's possible subsequent remarriage and family or financial misfortune. In effect, the decree does not take into account his actual ability to pay. This seems to me to run counter to the statute. RCW 26.09.100 provides for apportionment of child support, and each parent should only pay an amount which is "reasonable or necessary." RCW 26.09.170 contemplates modification only as to installments accruing after a motion therefor, and "only upon a *showing* of substantial change of circumstances." (Italics mine.) The decree effectively assumes that the father's circumstances will substantially and favorably change in the future. It is no answer to say that the father can, when his income rises, come to court and show that his overall ability to pay has not improved. The burden here has been cast upon the wrong person.

The three Washington cases cited in the majority's footnote 5 do not aid its cause. *Jensen v. Jensen,* 54 Wn.2d 473, 341 P.2d 882 (1959) involved only support for the wife pursuant to a property settlement agreement. The issue of automatic acceleration was not before the court, which merely held that the monthly amount may be set as a percentage of salary. There is no quarrel with that proposition. *Dillon v. Dillon,* 21 Wn.2d 311, 150 P.2d 594 (1944) only concerned a downwards modification of alimony and support; the Supreme Court held that the trial court had not abused its discretion. *Verde v. Verde,* 78 Wn.2d 206, 471

238

P.2d 84 (1970) also involved an agreed–upon provision for escalation of support which did not have to be modified simply because the husband remarried. When the parties have agreed upon an escalation provision for support in a separation agreement, courts will approve it under RCW 26.09.070(7). This statute allows the parties to provide as they wish, but it does not apply to the instant case.

It must be clearly understood that my complaint is not with the concept of percentage support payments, but only with automatic percentage escalation in the future, without regard to need or ability to pay.

Reconsideration denied September 28, 1978.