[No. 31426-6-II.   Division Two.   December 20, 2005.]

*In the Matter of the Personal Restraint of* KELLY DUANE SMITH, *Petitioner.*

*David L. Donnan* and *Thomas M. Kummerow* (of *Washington Appellate Project*), for petitioner.

*Robert M. McKenna, Attorney General*, and *Douglas W. Carr, Assistant*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — Kelly Smith challenges Department of Corrections (DOC) Policy 200.000, requiring that an inmate's debt to DOC be taken from the inmate's savings account at the time of custodial release. Smith maintains that the legislature's purpose for requiring inmate savings accounts is undermined when DOC is able to take those funds. DOC maintains that Smith's personal restraint petition (PRP) is moot because he received the full

amount of his savings account. Alternatively, DOC maintains that the policy is consistent with RCW 72.09.450(2), which grants the agency the power to recoup inmate debt. We address Smith's technically moot challenge but conclude that DOC Policy 200.000 is valid.

## FACTS

¶2 When a prison inmate earns or receives money, DOC is generally required to deduct 10 percent for a personal inmate savings account (PISA). RCW 72.09.111(1)(a)(ii), (b)(ii), (c)(ii), .480(2)-(3).[1] The PISA is essentially a "compelled savings account"[2] that, together with any accrued interest, is available to the inmate upon his or her release. RCW 72.09.111(3).

¶3 On November 18, 2003, while incarcerated in a state prison, Smith filed an inquiry about the status of his PISA funds. Smith received a written response informing him that DOC "will take all money if you owe debt . . . when you release." Br. of Pet'r at Ex. 2. The notice cited DOC Policy 200.000, which authorizes DOC to recover inmate debt by deducting such amount from any money that the inmate is entitled to at his or her release.[3]

¶4 While still incarcerated, Smith filed this PRP challenging DOC Policy 200.000. Smith maintained that the policy conflicted with the legislature's purpose for requiring PISAs. After DOC filed a response to Smith's PRP, it also filed a motion to dismiss in which it maintained that the

---

[1] A PISA deduction is not made for certain gratuities and for funds designated to pay for a fee-based educational or vocational program. RCW 72.09.111(1)(d)-(e), .480(5).

[2] *Dean v. Lehman*, 143 Wn.2d 12, 17, 18 P.3d 523 (2001).

[3] DOC Policy 200.000(DEDUCTIONS)(VI)(D) provides:

Debt balances may be collected in full from the offender's available balance at the time the offender is discharged from the custody of the Department. Available balance of an offender's account is the amount of funds to be released to the offender. However, at the Superintendent's/Work Release Supervisor's discretion, an offender may retain sufficient funds for establishing personal residence upon release.

Br. of Resp't at Ex. A.

issue was moot. As it turns out, Smith was released from incarceration on June 10, 2004, and received the full amount ($139.61) of his PISA. This court denied DOC's motion and appointed counsel for Smith.

## ANALYSIS

MOOTNESS

¶5 To obtain relief through a PRP, the petitioner must be subject to an unlawful restraint, which includes any disability resulting from a judgment or sentence in a criminal case. RAP 16.4(b); *In re Pers. Restraint of Meyer*, 142 Wn.2d 608, 615, 16 P.3d 563 (2001). The unlawful restraint which Smith challenges is the imminent deduction of funds from his PISA. But because Smith received the entire amount of his PISA upon release from prison, his PRP is moot. *See In re Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983) ("A case is moot if a court can no longer provide effective relief."); *In re Pers. Restraint of Sappenfield*, 138 Wn.2d 588, 595, 980 P.2d 1271 (1999) (grantable relief in a PRP is limited to removal of the unlawful restraint).

¶6 Nonetheless, we may decide a moot issue if it involves matters of continuing and substantial public interest. *In re Pers. Restraint of Mines*, 146 Wn.2d 279, 285, 45 P.3d 535 (2002). To determine whether a case involves the requisite public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination which will provide future guidance to public officers, and (3) the likelihood that the question will recur. *Mines*, 146 Wn.2d at 285.

¶7 The facts here weigh in favor of further review. Smith challenges an enacted policy that DOC continues to enforce against other inmates.[4] This court's review would

---

[4] We note that it was technically not DOC's decision to return Smith's PISA funds in full which rendered this PRP moot. Even had DOC deducted Smith's outstanding debt when he was released, his PRP would still be moot because no effective relief could be granted. *See Sappenfield*, 138 Wn.2d at 595 (where DOC collected money on invalid restitution orders, petitioner was required to file civil action to obtain relief).

also provide guidance on a question of unquestionable concern to DOC: How may DOC lawfully collect an inmate's debt? Accordingly, we proceed to the merits of Smith's PRP.

DOC POLICY 200.000

■■ ¶8 An administrative agency possesses only those powers either expressly granted or necessarily implied from statutory grants of authority. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 646, 62 P.3d 462 (2003). An administrative rule adopted pursuant to a legislative grant of authority is presumed valid and will be upheld if it is reasonably consistent with the statute being implemented and does not amend or contravene other legislative enactments. *Green River Cmty. Coll. v. Higher Educ. Pers. Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826, 633 P.2d 1324 (1980) *adhered to on recons.*, 95 Wn.2d 962 (1981). A party challenging an administrative rule must compellingly show that the rule is invalid. *Green River Cmty. Coll.*, 95 Wn.2d at 112.

■ ¶9 DOC does not dispute that DOC Policy 200.000 undermines the legislature's intention for requiring inmates to contribute to a PISA. DOC agrees with Smith, and we do too, that PISAs reflect a clear legislative determination that felons should not be released destitute and without some means of reestablishing themselves in the community. This intention is aptly reflected by the PISA-deduction exemption for inmates sentenced to death or life imprisonment without the possibility of release. RCW 72.09.111(2).

■ ¶10 But DOC maintains that it has been given specific authority for collecting debts as it does by RCW 72-.09.450(2), which provides: "The department shall record all lawfully authorized assessments for services or supplies as a debt to the department. The department shall recoup the assessments when the inmate's *institutional account* exceeds the indigency standard, *and may pursue other remedies to recoup the assessments after the period of incarceration.*" (Emphasis added.) A reading of this statute provides

two bases for DOC's position: Either "institutional account" is defined to include PISAs, or the deduction of debts at the time of release is a recouping remedy occurring "after the period of incarceration."

¶11 Under RCW 72.09.450(2), DOC is entitled to recoup inmate debt whenever "the inmate's institutional account exceeds the indigency standard." There is no definition for an "institutional account." The only other time this term is mentioned is in the "indigency standard" definition: " '[I]ndigency' mean[s] an inmate who has less than a ten-dollar balance of disposable income in his or her institutional account on the day a request is made to utilize funds and during the thirty days previous to the request." RCW 72.09.015(10).

¶12 Smith argues that "institutional account" refers to an inmate's "checking" account, i.e., an account used to purchase goods and services within the prison institution. The legislature might have intended debt to be recouped from this account once an inmate had what it deemed a minimal amount of spending money. Under this interpretation of "institutional account," it would be improper for DOC to deduct debt from an inmate's PISA.

¶13 But significantly, RCW 72.09.450(2) does not require DOC to recoup debt from the institutional account. The statute's only debt recoupment limitation is that the inmate be left with $10 of disposable income in the institutional account. Thus, if an inmate has more than one type of account—PISA and institutional accounts included—DOC is free to deduct debt from all of them provided that $10 of disposable income remains in the institutional account. Reference to an inmate's "institutional" account suggests that an inmate has more than one account; only a "Department" or "DOC" label would unambiguously reflect the existence of only one account.

¶14 Moreover, the argument that institutional account refers to an inmate's checking account is inconsistent with the requirement that there be $10 of *disposable* income in the institutional account. Unless an institutional account

includes funds which are disposable and nondisposable, the requirement that there be $10 of *disposable* income would be extraneous. *See Whatcom County v. City of Bellingham,* 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) ("Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.").

¶15 The State's interest in recouping debt also supports the plausibility of DOC's interpretation. That interest is set forth in the legislature's findings accompanying RCW 72.09.450:

> The legislature finds the increasing number of inmates incarcerated in state correctional institutions, and the expenses associated with their incarceration, require expanded efforts to contain corrections costs. Cost containment requires improved planning and oversight, and increased accountability and responsibility on the part of inmates and the department.
>
> . . . .
>
> The purpose of this act is to assure that the department fulfills its mission to reduce offender recidivism, to mirror the values of the community by clearly linking inmate behavior to receipt of privileges, and to prudently manage the resources it receives through tax dollars. This purpose is accomplished through the implementation of specific cost-control measures and creation of a planning and oversight process that will improve the department's effectiveness and efficiencies.

LAWS OF 1995, 1st Spec. Sess., ch. 19, § 1.

¶16 Smith's petition calls into question two competing state interests: The State unquestionably has an interest in reducing recidivism and in fostering an inmate's return to the community, but it also has an interest in containing corrections costs and recouping debt owed. The extent to which these interests conflict is represented by DOC Policy 200.000 and RCW 72.09.111's requirement that PISAs be maintained. But RCW 72.09.450(2) authorizes DOC to recoup all inmate debt so long as the inmate retains $10 of disposable income while incarcerated; it also authorizes

DOC to "pursue other remedies" to recoup debt "after the period of incarceration." DOC Policy 200.000 is reasonably consistent with RCW 72.09.450(2).

¶17 We dismiss Smith's moot petition.

HUNT and VAN DEREN, JJ., concur.