[No. 32549-7-II.   Division Two.   May 16, 2006.]

ALDOREN F. KAUZLARICH, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Marilyn R. Gunther*, for appellant.

*Robert M. McKenna, Attorney General*, and *Lianne S. Malloy, Assistant*, for respondent.

¶1 Van Deren, J. — Aldoren F. Kauzlarich appeals the trial court's affirmance of the administrative law judge's (ALJ) refusal to consider Kauzlarich's equitable offset arguments in a license suspension hearing held under RCW 74-.20A.320. A review judge (RJ) for the Department of Social and Health Services (DSHS) Board of Appeals and the Pierce County Superior Court both affirmed the ALJ's initial order. Holding that resolution of equitable child support offset arguments exceeds the jurisdiction of license suspension hearings, we affirm.

## FACTS

¶2 Aldoren Kauzlarich and Raelene Jo Adolf are the parents of four children who are all now well past the age of majority.[1] On June 18, 1990, Pierce County Superior Court entered a paternity order establishing Kauzlarich's paternity and child support obligation for all four children. The order required that Kauzlarich pay a total of $760 per month ($190 per child) until each child either turned 18 or graduated from high school (whichever occurred later), until a child was emancipated, or until further order of the court. The 1990 order also established Kauzlarich's back child support obligation of $9,725. Over the next several years, the court also issued a complicated series of orders and judgments regarding custody, parenting plans, and the child support obligations of both parents.

¶3 The Division of Child Support (DCS), a division of DSHS, served Kauzlarich with a notice of noncompliance and intent to suspend licenses in April 2000 as a result

---

[1] The children are all in their mid-20s.

of Kauzlarich's alleged failure to satisfy back child support obligations in the approximate amount of $13,250. Kauzlarich objected, claiming that he did not owe any back child support but that, rather, he was owed child support. Between April 2000 and November 2001, the administrative license suspension proceedings were continued numerous times. At oral argument before us, DCS indicated, and Kauzlarich did not disagree, that those continuances were to allow Kauzlarich to obtain further orders clarifying his child support obligations from superior court. Kauzlarich failed to petition the superior court for a determination of his relative support obligations and arrearages, if any.

¶4 An adjudicative administrative hearing was finally held on November 14, 2001, to evaluate Kauzlarich's objections. At this hearing, DCS presented evidence that Kauzlarich made his last child support payment in March 1997, that he had paid a total of $48,362 in child support, and that the total remaining child support debt was about $14,753. Kauzlarich argued that he was not in arrears because Adolf owed him child support and because he received child support credit under a 1990 agreed settlement with DCS (a settlement later vacated by the superior court) that offset any unpaid child support obligation.

¶5 In an initial order dated January 18, 2002, the ALJ determined that there was no statute or regulation conferring jurisdiction on an ALJ in a license suspension hearing to consider or decide Kauzlarich's arguments. The hearing was limited in scope to the license suspension matter, and the only issues were whether Kauzlarich was required to pay child support under a child support order and whether Kauzlarich was at least six months in arrears on those obligations. The ALJ then determined that Kauzlarich was required to pay child support under a child support order, that he was at least six months in arrears on those obligations, and that DCS could therefore certify Kauzlarich for license suspension.

¶6 After an RJ for the DSHS Board of Appeals affirmed the ALJ's initial order, Kauzlarich appealed to the Pierce County Superior Court, which affirmed the RJ's order.

¶7 Kauzlarich appeals.

## ANALYSIS

### I. Standard of Review

■ ¶8 In reviewing an agency's adjudicative decision, we sit in the same position as the trial court and apply the Administrative Procedure Act[2] (APA) standards directly to the agency's administrative record. *Timberlane Mobile Home Park v. Human Rights Comm'n*, 122 Wn. App. 896, 900, 95 P.3d 1288 (2004); *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus.*, 112 Wn. App. 291, 296, 49 P.3d 135 (2002) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993)). Under the APA, the "burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a).

■ ¶9 Like the trial court, we review questions of law de novo but accord substantial weight to the agency's interpretation of the statutes it administers. *Superior Asphalt,* 112 Wn. App. at 296 (citing *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.,* 109 Wn.2d 819, 823, 748 P.2d 1112 (1988)). This matter raises only an issue of law: the jurisdictional parameters of a license suspension hearing when the licensee argues equitable offsets to a child support obligation.

### II. Jurisdiction

¶10 Kauzlarich argues that the ALJ had jurisdiction to consider his equitable arguments that (1) child support obligations Adolf allegedly owed to Kauzlarich and (2) credits due Kauzlarich under the December 26, 1990 agreed settlement offset and eliminated any remaining child sup-

---

[2] Ch. 34.05 RCW.

port obligation he had under the superior court's numerous child support orders. He contends that RCW 26.19.011(3), RCW 26.19.035, and former WAC 388-11-067 (1994)[3] confer jurisdiction on an ALJ to consider his equitable arguments in a license suspension hearing.

¶11 DSHS responds that the ALJ did not have jurisdiction to consider Kauzlarich's equitable arguments because (1) neither the statutes nor the regulations Kauzlarich cites confer equitable jurisdiction within license suspension hearings to resolve disputes over child support between the parties to superior court child support orders and (2) Pierce County Superior Court has continuing jurisdiction over its child support orders.

¶12 RCW 74.20A.320 details Washington's license suspension program. It authorizes DSHS and the Department of Licensing to suspend any license a person may possess under Washington law when that parent fails to comply with a child support order. RCW 74.20A.320. When a parent receives a notice of noncompliance, he may request an adjudicative proceeding to contest the issue of compliance with the child support order. RCW 74.20A.320(2)(a). But the only issues an ALJ may consider at the adjudicative proceeding are whether the parent is required to pay child support under a child support order and whether the parent is in compliance with that order. RCW 74.20A.320(2)(a), (3); WAC 388-14A-4530.

¶13 Here, Kauzlarich contends that the ALJ had to consider his equitable offset arguments to determine whether he was in compliance with the relevant child support orders.[4] Kauzlarich argues that the amount of his child support obligation is less than what DCS asserts.

---

[3] Recodified as WAC 388-14A-6500 (2001).

[4] Kauzlarich's equitable offset arguments seem to concede that he was required to pay child support under child support orders and that he has not paid the child support. His arguments suggest that reasons independent of the child support orders (and his failure to make payments in satisfaction of the orders) render his obligation fulfilled.

¶14 The adjudicative proceeding provisions under RCW 74.20A.320(2)(a) and (3) are narrow and do not contemplate the resolution of uncertainty or dispute over the amount of an outstanding child support obligation. RCW 74.20A-.320(2)(a) and (11) specifically state that (1) nothing under RCW 74.20A.320 prohibits an allegedly noncompliant parent from either moving the superior court to modify court-ordered support or requesting that DCS amend an administratively imposed support obligation and (2) the court or DCS may stay an action to suspend the parent's licenses if there is a reasonable likelihood that an allegedly noncompliant parent's support obligation will change as a result of the motion or request. These provisions indicate the legislature's intent to have issues other than the existence of a child support order and arrearages of six months or more resolved in proceedings independent of a license suspension hearing.

¶15 Moreover, WAC 388-14A-4530 states that the ALJ at a license suspension hearing is not required to calculate the amount of an outstanding child support debt but instead, must only determine whether the responsible parent is at least six months in arrears. This provision, along with RCW 74.20A.320(2)(a) and (11), indicates that issues beyond the responsible parent's payment history on a child support order, including the actual amount owed, are outside the scope of the license suspension hearing.

¶16 Furthermore, Pierce County Superior Court maintains continuing jurisdiction over child support orders it issues. RCW 26.18.040(3). DCS does not have the authority to reduce court-ordered child support obligations. See RCW 74.20A.059; RCW 26.09.170, .173, .175; RCW 26-.18.040(3); WAC 388-14A-3800.

¶17 RCW 26.09.170 through .175 outline the procedures for modifying court-ordered child support. The provisions do not authorize an administrative agency to modify a court-ordered child support obligation. Rather, DCS has authority only to enforce and collect support obligations estab-

lished by a superior court order.[5] WAC 388-14A-4000. An administrative agency has only those powers either expressly granted or necessarily implied from statutory grants of authority.[6] *In re Pers. Restraint of Smith*, 130 Wn. App. 897, 901, 125 P.3d 233 (2005) (citing *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 646, 62 P.3d 462 (2003)).

¶18 Kauzlarich also argues that former WAC 388-11-067 grants authority to consider his equitable arguments in a license suspension hearing. Although WAC 388-14A-6500(1) does state that "equitable estoppel is available in adjudicative proceedings conducted under this chapter," the provision derives its authority specifically from RCW 74-.20A.055,[7] a provision authorizing DCS to determine a parent's financial responsibility when there is no court order establishing a parent's obligation. The hearing procedures outlined under part F of chapter 388-14A WAC deal solely with hearings dedicated to the administrative *establishment* of child support obligations, not the *modification or reduction* of court-ordered support obligations.

¶19 Finally, and perhaps most importantly, Adolf was not a party to the license suspension hearing as the only parties to a license suspension hearing under RCW 74.20A.320 are the allegedly noncompliant parent and DCS. *See also* WAC 388-14A-4500 through -4530. Any consideration of

---

[5] DCS may also establish a child support obligation when there is no existing court child support order. WAC 388-14A-3100.

[6] Kauzlarich asserts that RCW 26.19.011(3) and RCW 26.19.035 confer equitable jurisdiction on administrative agencies. But those provisions deal with Washington's child support schedule and the standards used to establish parents' child support obligations. They do not deal with modification of child support orders and do not confer jurisdiction on administrative agencies to modify superior courts' child support orders.

[7] The hearings procedures under part F of chapter 388-14A WAC also derive authority from chapter 34.05 RCW (the APA), and chapter 388-02 WAC. Those chapters, however, deal only with general rules of administrative adjudicative proceedings and do not address specific subject areas such as child support orders. Because RCW 74.20A.055 specifically applies to DCS's authority to require an adjudicative proceeding to establish a child support obligation, we infer that the hearings procedures under part F of chapter 388-14A WAC deal solely with the establishment of child support obligations, not their modification.

Kauzlarich's equitable offset arguments would have constituted an in absentia adjudication of Adolf's right to back child support and her alleged financial obligation to Kauzlarich, a violation of her due process rights.[8] Moreover, RCW 26.09.175's express language contemplates the presence of both parents before a court-ordered child support obligation can be modified.

¶20 The jurisdiction of the license suspension hearing did not extend to the consideration of Kauzlarich's equitable offset arguments.

### III. PROCEDURAL DUE PROCESS

¶21 Kauzlarich argues that the license suspension hearing under RCW 74.20A.320 violated his procedural due process rights because he was not allowed to present his equitable offset arguments, rendering the hearing meaningless. But RCW 74.20A.320(2)(i) and (11) expressly allow DSHS to stay actions to certify a parent to the Department of Licensing if the parent files a motion to modify his child support obligation after he receives notice of noncompliance. Kauzlarich had the option of initiating a modification proceeding in Pierce County Superior Court to consider his equitable offset arguments. *See Amunrud v. Dep't of Soc. & Health Servs.*, 124 Wn. App. 884, 891-92, 103 P.3d 257 (2004). Here, the license suspension hearing was delayed for 18 months, giving Kauzlarich ample opportunity to argue his equitable offset theories to the superior court that entered the orders relied on by DSHS. RCW 74.20A.320 did not violate Kauzlarich's procedural due process rights.

### IV. RCW 74.20A.320'S APPLICATION TO BACK CHILD SUPPORT

¶22 Without assigning error, Kauzlarich argues that RCW 74.20A.320 is available as an enforcement tool only

---

[8] At a minimum, procedural due process requires notice and an opportunity to be heard. *Silver Firs Town Homes, Inc. v. Silver Lake Water Dist.*, 103 Wn. App. 411, 425, 12 P.3d 1022 (2000) (citing *Rivett v. City of Tacoma*, 123 Wn.2d 573, 583, 870 P.2d 299 (1994)).

for failure to comply with a current child support order and that it cannot be used to enforce back child support. But the express language of RCW 74.20A.020(18)(a) states that " '[n]oncompliance with a child support order' " for purposes of the state's license suspension program means that an obligated parent has accumulated arrears for more than six months of child support payments. Nothing in that language implies that the license suspension program applies only to current child support orders. Further, such a restrictive interpretation of the statute contradicts the mandate of RCW 6.17.020(2), stating that a person who obtains a court order for accrued child support may enforce that order within 10 years of the youngest child's 18th birthday.

## V. ATTORNEY FEES

¶23 In his revised opening brief and again in his reply, Kauzlarich requests attorney fees under RCW 74.08.080. *See also* RAP 18.1(b). The State responds that the statute does not apply to judicial review of decisions in license suspension hearings and would not entitle a prevailing appellant to attorney fees.

¶24 It is not entirely clear whether RCW 74.08.080 applies here. In *Whitehead v. Department of Social & Health Services*, 92 Wn.2d 265, 267-68, 595 P.2d 926 (1979), our Supreme Court explained that RCW 74.08.080 constituted the only provision for appeal to the court in Title 74 RCW and that "[i]t is not improbable, therefore, that the legislature has regarded RCW 74.08.080 and its predecessors (all of which provided for attorney fees) as an appropriate procedure wherever appeals can be taken from determinations made under that title." *Whitehead*, 92 Wn.2d at 267-68. In contrast, we have held that the judicial review provisions of RCW 74.08.080 apply only to financial-need-based public assistance eligibility decisions. *Johnstun v. Dep't of Soc. & Health Servs.*, 53 Wn. App. 140, 143, 766 P.2d 1104 (1988). But whether RCW 74.08.080's judicial review and attorney fee provisions apply here is inconse-

quential because if the provisions do apply, Kauzlarich is not the prevailing party on appeal and would not be entitled to attorney fees. *See* RCW 74.08.080(3).

¶25 The trial court did not err and we affirm.

QUINN-BRINTNALL, C.J., and HUNT, J., concur.